[Civ. No. 33497.  Second Dist., Div. Five.  Jan. 30, 1970.]

WESTERN AND SOUTHERN LIFE INSURANCE COMPANY,
Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

## COUNSEL

Frank M. Gunter, O. C. Sattinger and Lillian S. Sattinger for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, Ernest P. Goodman, and Harold B. Haas, Assistant Attorneys General, for Defendant and Respondent.

## OPINION

**FRAMPTON, J. pro tem.\***—

### Statement of the Case

This is an appeal by plaintiff, an Ohio based life insurance company, from a judgment denying its claim for refund of $120,303.93, which sum was paid by it under protest as the result of a "Retaliatory Tax" assessment levied against it. The action seeks reimbursement thereof by credit or refund through special statutory remedy. The claim for refund was duly filed; plaintiff exhausted its administrative remedies and seeks to have determined by judgment its right to recover the amount as set forth in the claim.

■ The cause was tried upon a stipulation of facts and documentary evidence. No question of construction of the documents received in evidence is involved. In these circumstances only questions of law are presented here for determination. (*W. E. Hall Co.* v. *Franchise Tax Board,* 260 Cal.App.2d 179, 183 [66 Cal.Rptr. 911].)

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

## Summary of Stipulation of Facts

Plaintiff is, and at all relevant times was, a mutual life and disability insurer incorporated under the laws of, and having its principal place of business in, the State of Ohio. It was first admitted and authorized to transact business in the State of California in the year 1955. In the year 1956, pursuant to section 701 of the Insurance Code as amended by the Statutes of 1955, plaintiff was issued by the Department of Insurance a certificate of authority for an indefinite term. This authorization, by the terms of the amended code section, had its expiration fixed "with the expiration or termination of [the] corporate existence of the holder thereof." Such certificate of authority has never been revoked or modified and is in full force and effect.

At the time of the issuance of the certificate of authority to plaintiff in 1956, for the term of its corporate existence, article XIII, section 14-4/5 of the Constitution of the State of California imposed a premiums tax, referred to as the California Basis Tax, applicable to foreign and domestic insurers alike without discrimination between them. This section of the Constitution provided that this nondiscriminatory premiums tax was "in lieu of all other taxes" except, among other exceptions, "When by the laws of any other state or country any taxes, fines, penalties, licenses, fees, deposits of money or securities or other obligations or prohibitions are imposed on insurers of this State doing business in such other state or country, or upon their agents therein, in excess of those imposed upon insurers of such other state or country or upon their agents therein, so long as such laws continue in force, the same obligations and prohibitions of whatsoever kind may be imposed by the Legislature upon insurers of such other state or country doing business in this State, or upon their agents herein." (Cal. Const., art. XIII, § 14-4/5, subd. (f), par. (3).) This tax is referred to as a "Retaliatory Tax."

The State of Ohio does not, and did not at any time relevant here, discriminate in favor of its domestic insurers against a California insurer doing a similar business in the State of Ohio. For that reason, in other actions brought by the plaintiff, "Retaliatory Tax" assessments levied against it in the years prior to 1965 were finally adjudicated to be invalid and the plaintiff heretofore recovered final judgment for its claim of refund.

On November 3, 1964, subdivision (f) of section 14-4/5 of article XIII of the Constitution was amended in pertinent part as follows: "The tax imposed on insurers by this section is in lieu of all other taxes and licenses, state, county, and municipal, upon such insurers and their property, except:

". . . . . . . . . . . . . . . . . . .

"(3) When by or pursuant to the laws of any other state or foreign country any taxes, licenses and other fees, in the aggregate, and any fines, penalties, deposit requirements or other material obligations, prohibitions or restrictions are or would be imposed upon California insurers, or upon the agents or representatives of such insurers, which are in excess of such taxes, licenses and other fees, in the aggregate, or which are in excess of the fines, penalties, deposit requirements or other obligations, prohibitions, or restrictions directly imposed upon similar insurers, or upon the agents or representatives of such insurers, of such other state or country under the statutes of this state; so long as such laws of such other state or country continue in force or are so applied, the same taxes, licenses and other fees, in the aggregate, or fines, penalties or deposit requirements or other material obligations, prohibitions, or restrictions, of whatever kind shall be imposed upon the insurers, or upon the agents or representatives of such insurers, of such other state or country doing business or seeking to do business in California. . . .

"The provisions of this paragraph (3) of subdivision (f) shall not apply as to personal income taxes, nor as to ad valorem taxes on real or personal property nor as to special purpose obligations or assessments heretofore imposed by another state or foreign country in connection with particular kinds of insurance, other than property insurance; except that deductions, from premium taxes or other taxes otherwise payable, allowed on account of real estate or personal property taxes paid shall be taken into consideration in determining the propriety and extent of retaliatory action under this paragraph (3) of subdivision (f)."

Plaintiff had built its California insurance business to a volume producing premiums in California in excess of five million dollars. In the year 1964, and continuously thereafter, plaintiff's principal office in the State of California was, and now is located in Los Angeles, California, on real property owned by plaintiff and on which plaintiff constructed a building for such purpose and on which it paid, before delinquency, in the year 1964 the real estate taxes thereon duly assessed. Such real property consisted of only one building on which such office was located, the land on which the building then stood, and so much of the adjacent land as was required for the convenient use and occupation thereof. The real estate tax paid thereon in 1964 was the sum of $108,722.05.

The special findings disclose that in arriving at the tax levied against the plaintiff the following formula was used: "The net base for calculating plaintiff's taxes on earned premiums for 1964 in California was $5,450,937.56, resulting in a gross premiums tax of $126,944.97 on the

California Basis, exclusive of any Retaliatory Tax. From this, the realty tax in the sum of $108,722.05 on plaintiff's Principal Office building in California was deducted, leaving a net premium tax other than Retaliatory of $18,222.92. To this was added the annual Filing Fees of $25.00 and $10.00 for a Renewal Certificate, giving a total tax of $18,257.92 which was paid by plaintiff.

"To determine whether a Retaliatory Tax should be assessed, the same amount of business as plaintiff's was assumed by the California Department of Insurance and defendant for a hypothetical California insurer doing business in Ohio for the same year, and the method and rates for determining the Ohio tax on this volume of business was provided by plaintiff. The computations were made by the California Department of Insurance and defendant with this result:

1. Ohio Tax on Premiums...................$138,539.85
2. Renewal Fee—Certificate of Authority.............$2.00
3. Filing Annual Statement—Fee..................$20.00
4. Total Ohio Taxes.......................$138,561.85

From this was deducted the California premium tax of $18,257.92, previously assessed against and paid by plaintiff, leaving an excess in the hypothetical Ohio tax over the California tax in the sum of $120,303.93. This amount was assessed by defendant against plaintiff as the Retaliatory Tax for 1964 and was paid by it under protest. The total tax so assessed by defendant against plaintiff and paid by it computed on its 1964 business in California was the total of the Ohio taxes, to wit, $138,561.85. Plaintiff was denied the right to deduct from said total tax of $138,561.85 the amount of real estate taxes in the sum of $108,722.05 paid by it in the year 1964 before, or within thirty days after, becoming delinquent, on the real property owned by plaintiff at the time of payment, and in which was located in that year its Principal Office in the State of California."

The taxes, licenses and fees in the aggregate which the State of Ohio would impose upon California insurers similar to plaintiff for the privilege of doing business and computed on the business done by plaintiff in California during the period from and including November 4, 1964, the effective date of the amendment to the California Constitution here under consideration, to and including December 31, 1964, would be the sum of $13,425.23, plus $22 fees, and taxes and license fees on the California Basis on such business, exclusive of retaliatory assessment, would be $12,197.72, plus $35 fees.

The trial court concluded that "The provisions of Section 14-4/5 of

Article [X]III of the Constitution of the State of California, as amended November 3, 1964 (which amendment is hereinafter referred to as the 'amendment of November 3, 1964'), and of Section 685 through 685.4, inclusive, of the Insurance Code of this State, apply to the computation, levy, assessment and collection of the taxes imposed on plaintiff by virtue of that section of the California Constitution, in respect to premiums received on business done in this State by plaintiff during the entire calendar year 1964. The change in the conditions under which the retaliatory tax is imposed made by the amendment of November 3, 1964 was a change made during the current tax period and was clearly made effective as to plaintiff in accordance with law and the legislative intention. Neither the application to plaintiff's business of the entire calendar year 1964, of the provisions of the statute or of the amendment of November 3, 1964, nor the terms of the statute or of the amendment of November 3, 1964, deprived plaintiff of due process of law or equal protection of law in the sense in which those terms are used in the Fourteenth Amendment to the United States Constitution or violated any commerce clauses of that instrument.

"Pursuant to paragraph (3), subdivision (f), Section 14-4/5, Article XIII of the California Constitution, in course of computing the California taxes payable, for the purpose of retaliatory comparison with the Ohio taxes which would have been payable, in respect to business done during the calendar year 1964, defendant deducted, from the California tax otherwise payable, the amount of real estate taxes plaintiff paid on its principal office in California during the calendar year 1964, so that the California tax burden, for comparison with the Ohio tax burden, is the amount of California taxes which would have been paid, excluding the retaliatory tax.

"Likewise, pursuant to paragraph (3), subdivision (f), Section 14-4/5, Article XIII of the California Constitution, plaintiff in reporting, and defendant in computing, the Ohio tax burden for retaliatory purposes did not take into consideration the amount of the Ohio real estate taxes which would have been payable on a principal office in Ohio similar to plaintiff's principal office in California, so that the Ohio tax burden was thus determined without including the Ohio real estate taxes as part of that burden.

"From the retaliatory tax assessed as a result of this method of computation, plaintiff was not entitled to any further deduction on account of its real estate taxes paid in 1964 on its California principal office. This procedure was in accordance with law and did not deprive plaintiff of due process of law or of equal protection of the law in the sense in which those

terms are used in the Fourteenth Amendment to the United States Constitution and did not violate any of the Commerce Clauses of that instrument.

"The unlimited duration of the certificate of authority issued to plaintiff to transact insurance in California, prior to the enactment of an insurance retaliatory tax law, and prior to the 1964 amendment to the constitution which first imposed a retaliatory tax on plaintiff, did not entitle plaintiff to any manner of exemption or freedom from the operation of that enactment and amendment."

Judgment was rendered that plaintiff take nothing by reason of its action. The appeal is from the judgment.

### Contentions on Appeal

Plaintiff urges (1) retaliatory statutes are not revenue measures in the ordinary sense, but are defensive and punitive in nature, related to privileges which may be withheld by a state and, accordingly, have been sustained and afforded sanctuary from constitutional attack when provided for as a permissible "Condition of Admission" of a foreign corporation seeking to conduct a business unprotected by the commerce clause; (2) a change of the conditions for punitive retaliatory levies against foreign insurers so as to eliminate the prerequisite of discrimination against California insurers in the state of origin as previously prescribed by the California Constitution cannot be made effective as to a foreign insurer already admitted for the term of its corporate existence where, in fact, there is no such discrimination by the state of origin; (3) even if it be assumed arguendo that a retaliatory tax could be assessed against an insurer standing in plaintiff's position, plaintiff would be entitled to its "Principal Office Tax Deduction," which has here been improperly denied in violation of the 1964 amendment to the state Constitution and in violation of the equal protection clause of the United States Constitution; (4) assuming arguendo that any future retaliatory tax could be imposed against plaintiff by the 1964 amendment, that amendment would not, and did not purport to have retrospective application so as to permit a retaliation on plaintiff's 1964 business.

Plaintiff argues that the post-1955 admission of foreign insurers in California for an indefinite term under amended Insurance Code, section 701, as distinguished from the previously existing year to year admissions, although unequivocal, necessarily embraced, as a valid "Condition of Admission" of the insurer, the provisions of article XIII, section 14-4/5 of the California Constitution at the time of such admission, which expressly permitted the Legislature to impose punitive retaliatory assessments when, but only when the state of origin discriminated against California insurers

in favor of domestic insurers. That the change of the "Condition of Admission" of foreign insurers by the amendment to article XIII, section 14-4/5 in 1964, enlarging the authorization for such a punitive assessment must be construed to be applicable only to foreign insurers thereafter admitted. Its attempted construction to the contrary and its application to plaintiff herein in the continued absence of Ohio discrimination violates the Fourteenth Amendment to the United States Constitution and is a denial to plaintiff of equal protection and substantive due process thereunder.

In speaking of the right of the states to impose excise taxes the Supreme Court of the United States has said "The right of a state to exclude a foreign corporation from its borders, so long as no principle of the Federal Constitution is violated in such exclusion, has been repeatedly recognized in the decisions of this court, and the right to prescribe conditions upon which a corporation of that character may continue to do business in the state, unless some contract right in favor of the corporation prevents, or some constitutional right is denied in the exclusion of such corporation, is but the correlative of the power to exclude. [Citation omitted.] For example, a state may not say to a foreign corporation, you may do business within our borders if you permit your property to be taken without due process of law; or you may transact business in interstate commerce subject to the regulatory power of the state. To allow a state to exercise such authority would permit it to deprive of fundamental rights those entitled to the protection of the Constitution in every part of the Union." (*Baltic Min. Co.* v. *Massachusetts,* 231 U.S. 68, 83 [58 L.Ed. 127, 133, 34 S.Ct. 15].) An excise tax levied upon a New Jersey based insurer by South Carolina for business transacted in South Carolina but which is not levied against South Carolina corporations does not violate the commerce, equal protection or due process clauses of the United States Constitution. (*Prudential Ins. Co.* v. *Benjamin,* 328 U.S. 408 [90 L.Ed. 1342, 1364-1365, 66 S.Ct. 1142, 164 A.L.R. 476].) A retaliatory tax was not involved in *Benjamin*. In *Prudential Ins. Co.* v. *Hobbs,* and other companion cases, the Supreme Court of the United States sustained the right of the State of Kansas to assess and collect a retaliatory tax against 16 insurance companies incorporated under the laws of a state other than Kansas. The affirmance of the judgments in the Kansas cases was predicated upon the holding in *Prudential Ins. Co.* v. *Benjamin, supra.* (See *Prudential Ins. Co.* v. *Hobbs,* 328 U.S. 822-823 [90 L.Ed. 1602-1603, 66 S.Ct. 1360].) ▮ The California retaliatory tax law does not violate the commerce clause or the due process clause of the United States Constitution. (*Atlantic Ins. Co.* v. *State Board of Equalization,* 255 Cal.App.2d 1, 11-15 [62 Cal.Rptr. 784].)

▮ The insurance business is affected with public interest. It is there-

fore competent for the state, under its police power, to determine who may engage in the business within its boundaries, and to prescribe terms and conditions on which the business may be conducted. (*Caminetti* v. *Superior Court*, 16 Cal.2d 838, 842 [108 P.2d 911]; *Carpenter* v. *Pacific Mut. Life Ins. Co.*, 10 Cal.2d 307, 329 [74 P.2d 761]; 44 C.J.S., Insurance, § 56, p. 518.) Such regulations are valid as applied to corporations already engaged in the business. (*Eagle Ins. Co.* v. *Ohio*, 153 U.S. 446 [38 L.Ed. 778, 14 S.Ct. 868].) ■ The exercise of the police power may take the form of taxation of activities which it is desired to regulate or discourage. (11 Cal.Jur.2d, Constitutional Law, § 149, p. 529.)

In 1955, when plaintiff was first authorized to transact insurance business in California, section 700 of the Insurance Code provided in part that "A person shall not transact any class of insurance business in this State without first being admitted for such class. Such admission is secured by procuring a certificate of authority from the commissioner. Such certificate shall not be granted until the applicant conforms to the requirements of this code and of the laws of this State prerequisite to its issue. After such issue the holder shall continue to comply with the requirements as to its business set forth in this code and in the laws of this State." This statute was enacted in 1935, and was amended in 1945 in connection with matters not pertinent here.

■ Section 701 of the Insurance Code as amended in 1955, under which plaintiff obtained its certificate of authority to conduct an insurance business for the period of time coextensive with its corporate existence, provides for revocation of plaintiff's certificate of authority upon a determination by the commissioner, after notice and hearing, that plaintiff has failed to comply with any of the laws of this state regarding the governmental control of such insurer by the state. Thus, when plaintiff was admitted to do business in this state it, in legal effect, agreed to be bound by the laws of this state respecting the reasonable regulation of its business. This encompassed the laws in effect at the time of admission as well as those which might be amended or enacted subsequent thereto. (Cf. *In re Insurance Tax Cases*, 160 Kan. 300 [161 P.2d 726, 733], affd. 328 U.S. 822-823 [90 L.Ed. 1602-1603, 66 S.Ct. 1360-1361]; *Watson* v. *Employers Liab. Assur. Corp. Ltd.*, 348 U.S. 66 [99 L.Ed. 74, 75 S.Ct. 166] (concurring opinion of Mr. Justice Frankfurter, p. 86).) The right of the State of California, therefore, to amend its laws or to enact new laws respecting the reasonable conduct of plaintiff's insurance business within the state is not proscribed by the doctrine of "Conditions of Admission" as urged by plaintiff.

It is urged that if it is held that a retaliatory tax may be assessed against

it, plaintiff is entitled to its "Principal Office Tax Deduction" which was denied it in computing the tax here under the 1964 amendment.

The question of whether the California real estate tax which can be deducted is to be computed as part of the California tax load for retaliatory comparison was before the Supreme Court in considering a retaliatory tax upon an Illinois based corporation doing business in California where Illinois discriminated against California based insurers. This case was decided under section 14-4/5 of article XIII of the Constitution prior to its amendment in 1964. The court stated: "The Company secondly contends that the Board unconstitutionally and erroneously subtracted the real estate tax on its principal place of business from its California gross premium tax in computing the retaliatory tax.

"In determining the retaliatory tax the Board compared the amount of tax which Illinois would impose on a California insurer doing the same amount of business as plaintiff ($176,173.41) with the tax on plaintiff's gross receipts ($191,223.25) less the deduction for real estate taxes paid on the Company's principal place of business ($69,354.53). The Company contends that the real estate taxes must be included as part of the California tax for purposes of the comparison; if so, it would not be liable for any retaliatory tax.

"Section 685.1 of the Insurance Code provides that the retaliatory tax statute 'shall not apply as to' certain taxes on real property 'except that deductions, from premium taxes or other taxes otherwise payable, allowed on account of real estate or personal property taxes paid shall be taken into consideration in determining the propriety and extent of retaliatory action under this article.' As we shall explain, the Board correctly and constitutionally applied the statute by taking the deduction into consideration in arriving at the California tax for purposes of comparison with the Illinois tax.

"We read article XIII, section 14-4/5, subdivision (f)(3), as referring to taxes on the privilege of engaging in the insurance business and not as related to a property tax. (Cf. *Consolidated Title Security Co.* v. *Hopkins* (1934) 1 Cal.2d 414 [35 P.2d 320]; *Carpenter* v. *People's Mutual Life Ins. Co.* (1937) 10 Cal.2d 299 [74 P.2d 508]; 3 Witkin, Summary of Cal. Law (1960) 2246.) Moreover, subdivision (b) of the same section imposes the annual tax on insurers 'at the rates, and subject to the deductions from the tax hereinafter specified.' Thus the California tax to be compared with the Illinois tax for purposes of the retaliatory tax must be computed '*subject to the deduction*' specified in subdivision (e).

"We believe the position of the Company presents an inherent anomaly. It argues that, even though the real estate tax is deducted from the premium tax, nevertheless the real estate tax must be included in the retaliatory computation because it is 'part of the California tax burden on that insurance company.' If we accept this premise, however, we must likewise include in the Illinois burden the proper amount of real estate taxes upon a similar building in Illinois. Since the Board, in computing the total Illinois tax on California insurers, did not take into consideration any Illinois tax on property of a California insurer doing business in Illinois, the Board did not reach an unreasonable conclusion in refusing to credit the Company with the California property tax on its principal office in determining the amount of taxes paid for purposes of the retaliatory tax provision.

"Although we recognize that the failure to include the real property tax on a foreign insurer's principal office in the measure of California tax liability may, in some instances, render nugatory the deduction provided by article XIII, section 14-4/5, subdivision (e) of the California Constitution, this result would not follow if Illinois did not discriminate against California insurers or if the total Illinois insurance tax on California insurers were less than the total California insurance tax on Illinois insurers; hence the Board's application of the statute does not necessarily entail the abrogation of the deduction provided by the Constitution. The Board merely considers the deduction in computing a figure which may trigger the retaliatory tax." (*Franklin Life Ins. Co.* v. *State Board of Equalization,* 63 Cal.2d 222, 231-232 [45 Cal.Rptr. 869, 404 P.2d 477].)

▇ The 1964 amendment did not change the elements which the court in *Franklin, supra,* specified as grounds for approval of the method of treatment of the real estate deduction for purposes of retaliatory comparison. Furthermore, we are of the opinion that the language of the second paragraph of paragraph (3) of subdivision (f) of section 14-4/5 of article XIII of the Constitution as amended on November 3, 1964, specifically authorizes the method used here for the purpose of retaliatory comparison.

Plaintiff urges that if a future retaliatory tax may be imposed on plaintiff by the 1964 amendment, such amendment did not have retrospective application so as to permit a retaliation based upon plaintiff's 1964 business.

▇ The so-called retaliatory laws are also reciprocal in nature. "But, whether regarded as reciprocal or retaliatory, in so far as they are retaliatory in their nature, and involving the comity of states, they are to be strictly construed, executed with care, and not applied to any case that does not fall plainly within the letter of the law." (*Bankers Life Co.* v. *Richardson,* 192 Cal. 113, 124 [218 P. 586].) ▇ The retaliatory statutes are

penal in their nature and, therefore, must be strictly construed. They are not strictly a revenue measure, and any increase in revenue to the state under their application is incidental. ■ The primary object of retaliatory acts against foreign corporations is to secure for the insurance companies of the enacting state even-handed treatment by the Legislatures of other states. (*Indemnity Ins. Co. of North America* v. *Stowell,* 172 Ohio St. 167 [174 N.E.2d 536, 539]; *Pacific Mut. Life Ins. Co.* v. *State,* 161 Wash. 135 [296 P. 813, 815]; 44 C.J.S., Insurance, § 76, p. 561; 91 A.L.R. 817.) Prior to its amendment in 1964, the Constitution did not authorize the imposition of a retaliatory tax upon a foreign based insurance company doing business in California, absent discrimination by the foreign state against California insurance companies doing business in such state. (*Franklin Life Ins. Co.* v. *State Board of Equalization, supra,* 63 Cal.2d 222, 226.)

■ It is well settled that taxes levied for the purpose of revenue may be changed at any time during the current year. (*Fullerton Oil Co.* v. *Johnson,* 2 Cal.2d 162, 176 [39 P.2d 796]; *Filoli, Inc.* v. *Johnson,* 4 Cal.2d 662 [51 P.2d 1093]; *Holmes* v. *McColgan,* 17 Cal.2d 426, 430 [110 P.2d 428].)

■ In determining whether a statute imposing civil penalties should or should not be applied retrospectively, the use of certain guidelines are helpful. Some of them may be stated as follows: (1) The general presumption that legislative changes do not apply retrospectively unless the Legislature expresses its intention that they should do so, or there is a clear legislative intent to that effect; (2) the presumption of nonretroactivity rests in part upon the fact that the purpose of a legislative alteration would not often attain significant advancement by application of the amended legislation to transactions which preceded the legislative change; (3) the reason for denial of retrospective application, independently of the foregoing, lies in the fact that the contrary interpretation raises possible constitutional objections in view of the prohibition against ex post facto punishment; (4) it is sufficient that the constitutionality of retrospective application is not free from doubt, and would be constitutionally suspect, and (5) retrospective imposition of increased liabilities should be carefully avoided. (See *Wilke & Holzheiser Inc.* v. *Department of Alcoholic Beverage Control,* 65 Cal.2d 349, 371-373 [55 Cal.Rptr. 23, 420 P.2d 735].)

■ Applying these guidelines to the 1964 amendment to the Constitution, we find nothing in the language of the amendment expressly making it retrospective in its application, nor do we find a clear implication therein that it should be so applied. We find nothing in the legislative history lead-

ing up to the adoption of the 1964 amendment, or in the ballot pamphlet arguments presented to the electorate urging its adoption, as outlined in the Attorney General's brief, which indicates that the amendment should operate retrospectively to impose a penalty assessment for the year in which the amendment was adopted. Such history and arguments simply disclose the desirability of eliminating from the Constitution the provision which made retaliatory action dependent upon discrimination by the foreign state against domestic based insurers doing business in such state, and the desirability of placing California in a position to impose a retaliatory tax under its laws, absent discrimination, similar to that of some 44 other states which had adopted similar laws.

The Attorney General concedes that the retaliatory tax is imposed and earned for the privilege of doing business in California in a particular calendar year and is reported, assessed, and collected the following year. (See Rev. & Tax. Code, §§ 12281, 12283, 12284, 12287.) Thus, the penalty tax of $120,303.93, was assessed and collected in the year 1965, for the privilege given plaintiff to conduct its business in the year 1964.

Since retrospective application of the amendment is not expressed therein, nor is there a clear implication that the amendment should be so applied, and retrospective application is not necessary to prevent plaintiff from escaping taxation on the entire year's business on the same basis as a domestic insurer, and since a punitive tax with no beneficial result by retrospective application is involved, making the imposition of such tax constitutionally suspect, the primary object of the amendment being to secure for California based insurance companies even-handed treatment by Legislatures of other states, such tax may not be levied and collected against the plaintiff for the privilege of doing business in the year 1964. The amendment must be applied prospectively so as to authorize the imposition of the penalty tax for the privilege of doing business for the calendar year 1965, and subsequent years.

The judgment is reversed with directions to the trial court to enter judgment in favor of the plaintiff and against the defendant in the sum of $120,303.93 with interest thereon in accordance with the provisions of section 13107 of the Revenue and Taxation Code.

Stephens, Acting P. J., and Aiso, J., concurred.

A petition for a rehearing was denied February 10, 1970, and the petitions of the appellant and the respondent for a hearing by the Supreme Court were denied April 22, 1970.