[Civ. No. 24828.   Second Dist., Div. One.   Feb. 28, 1961.]

THE GARRETT CORPORATION (a Corporation), Appellant, v. STATE BOARD OF EQUALIZATION, Respondent.

O'Melveny & Myers, George F. Elmendorf and Bennett W. Priest for Appellant.

Stanley Mosk, Attorney General, Dan Kaufmann, Assistant Attorney General, and Jay L. Shavelson, Deputy Attorney General, for Respondent.

LILLIE, J.—Plaintiff, a California corporation, brought this action for the recovery of sales taxes paid under protest. The gross receipts, the subject of the tax, were derived from the sale of three aircraft by plaintiff to two foreign corporations. · The facts not being in dispute, the sole issue involves the applicability of a statute which provides for the exemption from taxation of the gross receipts of aircraft ''sold to persons who are not residents of this State and who will not use such aircraft in this State otherwise than in the removal of such aircraft from this State.'' (Rev. & Tax. Code, § 6366.)

In 1954 plaintiff sold an aircraft in California to National Cash Register, a Maryland corporation with its principal place of business in Ohio. The plane was flown to Dayton, Ohio, and was not returned to California except for servicing. In 1956 it sold another aircraft in California to the same company; this plane was flown to Ohio and never returned. Although the officers and directors of National Cash Register resided in Ohio and elsewhere, none resided in California. The company, however, was qualified to do business in this state prior to 1954, in which year it had 35 business locations situated in 29 California cities, it employed approximately 800 employees and its gross volume of business was in excess of $12,000,000. In 1956 it had approximately 1,000 employees in this state, and its gross volume of business here was $19,683,176.

In 1956 plaintiff sold an aircraft to Libbey-Owens-Ford Glass Company, an Ohio corporation with its principal place of business in that state. The plane was flown out of California and returned once for maintenance service. The officers and directors of Libbey-Owens-Ford resided in Ohio and other

states, but not in California. As with National Cash Register, the company was qualified to do business in this state prior to 1956; in that year it had places of business in San Francisco and Los Angeles staffed by 18 persons, and did a gross business of $9,000,000.

The single question for determination is whether the trial court erred in finding that the vendee corporations were "residents of this State" within the meaning of that term as found in section 6366, *supra*; the matter appears to be one of first impression.

Appellant contends that the "residence" of a corporation is in the jurisdiction where it was organized, even though its officers and stockholders reside elsewhere, and although it may do business in other jurisdictions. ". . . it is hardly necessary to cite authorities on the proposition that the residence of a corporation is where it was organized, and not where it may be transacting business in some other place . . . 'They are citizens, so to speak, of the state of their creation, and they are in contemplation of law absent from all other states than the one of their *situs*' [citations]." (*Keystone Driller Co.* v. *Superior Court*, 138 Cal. 738, 741-742 [72 P. 398].) In *Title Ins. & Trust Co.* v. *California Dev. Co.*, 171 Cal. 173 [152 P. 542], the same definition was applied with respect to an attachment statute (Code Civ. Proc., § 537): ". . . the evidence shows that the California Development Company was a nonresident of the State. It was organized under the laws of the State of New Jersey, and must therefore be regarded as a nonresident within the meaning of the attachment law [citations]." (P. 218.) Another attachment case, *Warner Mfg. Co.* v. *Standard Interstate Mfg. Co.*, 97 Cal.App.2d 494 [218 P.2d 131], is to the same general effect.

Respondent, on the other hand, maintains that the only possible concept of the word "resident" is not a domiciliary one; it argues that the term may have different meanings dependent upon the context in which it is used: "Courts and legal writers usually distinguish 'domicile' and 'residence,' so that 'domicile' is the one location with which for legal purposes a person is considered to have the most settled and permanent connection, the place where he intends to remain and to which, whenever he is absent, he has the intention of returning, . . . whereas 'residence' connotes any factual place of abode of some permanency, more than a mere temporary sojourn. 'Domicile' normally is the more comprehensive term, in that it includes both the *act* of residence and an

*intention* to remain; a person may have one domicile at a given time, but he may have more than one physical residence separate from his domicile, and at the same time (citations)." (*Smith* v. *Smith*, 45 Cal.2d 235, 239 [288 P.2d 497].) The court therein went on to mention several statutes where the word "resident" was synonymous with domicile: Section 301 of the Probate Code, relating to jurisdiction for the administration of decedents' estates; and section 128 of the Civil Code, providing that a divorce must not be granted unless the plaintiff has been a resident of the state for one year. Continuing, "On the other hand, 'nonresident' has a more factual meaning in contemplating an actual, as distinguished from a constructive or legal residence in the following statutes: Section 537 of the Code of Civil Procedure, providing for attachment in a contract action of property of a defendant 'not residing in this State' [citation]; and section 404 of the Vehicle Code, providing for substitute service on 'a nonresident' in an action arising from the operation of an automobile in this state (citation)." (Pp. 239-240.) Approvingly quoted is this statement from *Briggs* v. *Superior Court*, 81 Cal.App.2d 240, 245 [183 P.2d 758]: "Residence, as used in the law, is a most elusive and indefinite term . . . To determine its meaning, it is necessary to consider the purpose of the act."[1]

■ The state sales tax has been judicially construed as an excise tax for the privilege of conducting a retail business measured by the gross receipts from sales. (*City of Pomona* v. *State Board of Equalization*, 53 Cal.2d 305, 309 [1 Cal.Rptr. 489, 347 P.2d 904].) ■ Being a tax for revenue purposes, it "must lay its burdens uniformly upon all those who come within a proper classification of the persons to be subjected to its burden; and such a classification must have some reasonable basis for a differentiation between those who are and those who are not to be taxed; it must be founded upon some natural, intrinsic or constitutional distinction, and a purely adventitious condition can form no reasonable basis for a classification." (*Koenig* v. *Johnson*, 71 Cal.App.2d 739, 752 [163 P.2d 746].) Nowhere in the Sales and Use Tax Law

---

[1]The Briggs case, in turn, quotes from *Hanson* v. *Graham*, 82 Cal. 631, 633 [23 P. 56, 7 L.R.A. 127], as follows: " 'It is apparent that the word "residence," like that of "a domicile," is often used to express different meanings, according to the subject-matter. In statutes relating to taxation, settlements, the right of suffrage, and qualifications for office, it may have a very different construction from that which belongs to it in the statutes relating to attachments . . . [citation].' "

(Rev. and Tax. Code, § 6001 et seq.) does the concept contended for by appellant project itself; nowhere in the act is the term "resident" defined; to the contrary, it appears that the pertinent legislation intended individuals and corporations to be treated alike. Thus, section 6005 reads as follows: "'Person' includes any individual, firm, copartnership, joint venture, association, social club, fraternal organization, *corporation* . . ." (emphasis added); the foregoing definition is declared to control the construction of the term unless or except where "the context otherwise requires" (Rev. & Tax. Code, § 6002). ▇▇▇ We agree with respondent's position that the use of the word "persons" in section 6366 without any specific proviso that corporations be treated differently indicates an intent on the part of the Legislature that individuals and corporations, whether foreign or domestic, be subject to the same rule with respect to the particular exemption in question. The view thus taken is fortified by the fact that other provisions of the act likewise use the word "person" without any distinguishing or limiting language; for example, " 'Business' includes any activity engaged in by any *person* or caused to be engaged in by him with the object of gain, benefit, or advantage . . . (emphasis added)." (Rev. & Tax. Code, § 6013); " 'Seller' includes every *person* engaged in the business of selling tangible personal property of a kind the gross receipts from the retail sale of which are required to be included in the measure of the sales tax" (emphasis added) (Rev. & Tax. Code, § 6014); finally, section 6015 of the same code defines "Retailer" as a "person" or "seller" engaged in certain business operations therein set forth.

Appellant, on the other hand, points to certain statutes (the pertinent language of which we have emphasized) for the asserted proposition that the Legislature did not intend that "residents," as used in section 6366, should include all corporations doing business in California. Thus, section 114 of the Revenue and Taxation Code defines debts for property taxation purposes as unsecured liabilities. to "bona fide residents of this State, or to *persons doing business in this State* (emphasis added)"; also, section 23151 of the same code provides for a tax on the net income of corporations in the following language: "With the exception of financial corporations, every corporation *doing business within the limits of this State* and not expressly exempted from taxation . . . shall annually pay to the State, for the privilege of exercising its corporate franchises within this State, a tax according to or

measured by its net income . . ." (emphasis added). Says appellant: "For 'persons who are not residents of this State' (as used in § 6366) the State would have us read 'persons who are not doing business in this State,' " from which it is concluded that "if this is what the Legislature intended, the Legislature would have said so in those very words." There are two answers to such contention. First, unlike the statutes relied on by appellant, section 6005 (defining the word "person") is an integral part of the Sales and Use Tax Law; dealing with the particular subject at hand, it must prevail over other statutes less specific in scope or pertaining to a different area of the California taxing system. Although statutes should be harmonized whenever possible, as against a general provision (broad enough to include a particular subject) a specific provision relating to the same particular subject will govern (*Rose* v. *State,* 19 Cal.2d 713, 724 [123 P.2d 505]) ; "if one must yield, the statute last enacted should control, 'particularly if it be a special act applicable to a particular subject . . .' [citation]" (*Coker* v. *Superior Court,* 70 Cal.App.2d 199, 201 [160 P.2d 885].)[2] Second, section 6366 is admittedly an exemption statute and therefore must be strictly construed against appellant (*Bay Cities Transp. Co.* v. *Johnson,* 8 Cal.2d 706, 712 [68 P.2d 710]) ; if the Legislature intended to exclude from the operation of the pertinent legislation every corporation in the category of the two vendee corporations here involved, it could easily have said so. By its failure to use any language limiting the word "persons," the Legislature indicated its intention not to limit or circumscribe the scope of the act. (*Santa Fe Transp. Co.* v. *State Board of Equalization,* 51 Cal.2d 531, 539 [334 P.2d 907].) "Exemptions from taxation must be found in the statute." (*Market St. Ry. Co.* v. *California State Board of Equalization,* 137 Cal.App.2d 87, 96 [290 P.2d 20].) Paraphrasing from language immediately following that just quoted, it is not for the courts to say that, although the statute applies to vendees of aircraft who are not residents of this state, it does not apply to certain corporate vendees because of some undisclosed general "intent."

Although conceding that the rule of strict construction here applies, appellant properly argues that we are not thereby forbidden from giving a "strict but reasonable" construction

---

[2]Sections 6005 and 6366 were last amended in 1951; on the other hand, section 114 was last amended in 1941, while section 23151, added in 1949, was amended in 1959—subsequent to the institution of the present action.

to section 6366; cited by appellant is *Pan American World Airways* v. *State Board of Equalization,* 131 Cal.App.2d 638 [281 P.2d 23] where a "common sense construction" of the same statute was applied. We do not believe that the decision is authority for appellant's contention as applied to the situation here. As the opinion indicates, "The gist of the case is that, upon the arrival of the plane in this state, all the controversial equipment had become an integral part of the 'aircraft' and hence was exempted from the storage and use taxes under the provisions of the Revenue and Taxation Code. . . . The common sense construction of our statutes is that, in excepting the 'aircraft' from the use tax, the statutes exempted all the essential equipment required by the federal regulations as an integral part of the aircraft." (P. 642.) The court did not find it necessary to discuss (as we have been required to do) rules of statutory construction. Also cited by appellant is *B. F. Goodrich Co.* v. *Peck,* 161 Ohio 202 [118 N.E.2d 525] where a foreign corporation qualified to do business in Ohio contended that it was a "nonresident" within the meaning of a statutory exemption from personal property taxes. The court concluded: "It may be that Ohio can treat a foreign corporation qualified to do business in Ohio, such as Goodrich, as a resident of Ohio, for the purposes of taxation. However, the question here is whether, in the absence of the expression of a contrary legislation intention, a corporation incorporated under the laws of another state will or will not generally be described by the use in a statute of the word 'nonresident.' In our opinion, it will." (P. 527.) The holding, in our opinion, is clearly at variance with *Santa Fe Transp. Co.* v. *State Board of Equalization, supra,* 51 Cal.2d 531, to the effect that exemption statutes are to be strictly construed; furthermore, the Ohio court, although recognizing that its interpretation of the statute would result in discrimination against Ohio domestic corporations and residents, felt that the problem was one for action by the legislature of that state; for our part, we do not believe that California's legislators intended any such result by the enactment of section 6366.

In summary, to adopt the view that the corporation—purchasers here concerned—did not have a factual abode in this state of same permanency and therefore, were not residents within the meaning of section 6366 would be simply unrealistic in the light of the uncontradicted facts. Both companies, as heretofore related, had places of business in California staffed by numerous employees and grossing millions of dollars during

the years in question. Neither theoretically nor as a practical matter is appellant's thesis sustainable.

It is next contended that there exists in the Sales and Use Tax Law a legislative intent not to impose a tax on goods which are to be removed from the state and not used here. As authority therefor reliance is had on title 18, section 2015 (a) (1) (C) of the California Administrative Code which exempts from the sales tax all transactions in which the goods are transported outside the state by the retailer, a carrier or a forwarding agent; appellant, however, concedes that the exemption will not "normally" be available if the sale and delivery take place in California (section 2015 (a) (2) (B), Cal. Admin. Code). It seems that the statutory basis for section 2015, *supra,* is found in section 6352 of the Revenue and Taxation Code which exempts from taxation the gross receipts from sales made in interstate commerce; as therein declared, "this State is prohibited from taxing [such sales] under the Constitution or laws of the United States . . ." Section 2015 simply endeavors to define when the goods have entered the flow of interstate commerce. Contrary to appellant's assertion, it appears that the established policy of this state is to tax the gross receipts from all sales in this state (*Chicago Bridge & Iron Co.* v. *Johnson,* 19 Cal.2d 162, 165 [119 P.2d 945]) save and where a sales transaction is specifically exempted. Section 6366 is a deviation from such policy, and two requirements must be met; first, the aircraft will not be used in California; second, the purchaser is not a resident of this state. If appellant's position is correct, namely, that there exists a legislative intent not to tax sales of goods not used in California, there would have been no necessity to impose the additional requirement that the purchaser not be a resident of California. The focus of section 6366 is not confined to the use of the aircraft; it is likewise directed to the activities of the purchaser within California. Additionally, the very fact that exemptions from taxation under the act must be provided for by specific statute refutes the argument that there is a general legislative intent not to tax sales of property for use outside the state. See, for example, section 6386 of the Revenue and Taxation Code which deals with the sale of tangible personal property to a purchaser who uses the property to improve property outside the state.

Appellant's final point concerns the discrimination which will attend the construction urged by respondent board: "To

make the exemption turn upon the form of business entity is to add a qualification to the statute which is not there . . ."; it is also argued that the exemption was adopted to aid the aircraft industry whose contribution to the economic growth of California cannot be gainsaid. "But," as the trial judge observed, "it is one thing to be sympathetic and quite another thing to interpret the law"; furthermore, the construction contended for by appellant would discriminate between corporations and residents of this state as opposed to out-of-state corporations, and it is a part of our constitution that "No corporation organized outside the limits of this State shall be allowed to transact business within this State on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this State." (Const., art. XII, § 15.) Courts must take a statute as they find it; if its operation results in inequality or hardship, the remedy is with the Legislature. (*Jordan* v. *Retirement Board,* 35 Cal. App.2d 653, 656 [96 P.2d 973].)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.