[Civ. No. 44077. Second Dist., Div. Five. Apr. 15, 1975.]

SOUTHERN CALIFORNIA ASSOCIATION OF SEVENTH-DAY ADVENTISTS, Plaintiff and Respondent, v.
FRANCHISE TAX BOARD, Defendant and Appellant.

208

## COUNSEL

Evelle J. Younger, Attorney General, and Philip C. Griffin, Deputy Attorney General, for Defendant and Appellant.

Bunn & Peterson and Robert M. Peterson for Plaintiff and Respondent.

## OPINION

## HASTINGS, J.—

### INTRODUCTION

Plaintiff-Respondent Southern California Association of Seventh-Day Adventists[1] (Association) brought this action for a refund of franchise tax payments paid by it based on the contention that section 23704.5 of the Revenue and Taxation Code[2] is unconstitutional. The trial court agreed with this contention.

### STATEMENT OF FACTS

Association exists for the purpose of owning and operating the facilities of the Seventh-Day Adventist Church within the geographic area assigned to it. As part of the evangelical effort of the Seventh-Day Adventist Church, Association owns and operates Newbury Park Aca-

---

[1]Association is a corporation duly organized and existing under and by virtue of the general nonprofit corporation law of the State of California.

[2]Unless otherwise stated, all references are to the Revenue and Taxation Code.

demy, a parochial high school. This school owns and operates a laundry which provides laundry services to the public for compensation.[3]

The Legislature of the State of California, during its 1972 regular session, enacted an amendment to section 23704.5[4] which requires the Franchise Tax Board (Board) to revoke Association's exemption from California franchise tax, to which it is otherwise entitled as a church, if it provides a laundry service to the public for compensation.

The section involved was enacted by the California Legislature as a result of a request by the California Laundry and Linen Supply Association who charged that the operation of a laundry service available to the public for compensation by a religious or educational corporation exempt from California franchise tax was unfair and discriminatory to competing laundries in the same community which did not enjoy such tax exemption.[5]

On June 8, 1973, Board revoked the tax-exempt status of Association because the school operated the laundry. Association filed with Board a

---

[3]According to Association, the purpose of the various industries owned and operated by it in connection with Newbury Park Academy is to, so far as possible, provide part-time employment for students. Such employment is essential because many students need employment to defray a portion of the cost of attending the school. The Association also attempts to provide every student, regardless of need, with some part-time employment so that the student will learn the work ethic. This is regarded as a fundamental religious principle inherent in being a good citizen and a good Christian.

[4]Section 23704.5 with amendments (Stats, 1972, ch. 1080, p. 2014, § 3, urgency, eff. Aug. 18, 1972) provides as follows:

"For purposes of Section 23701d, *a corporation shall not be deemed to be organized and operated exclusively for educational or religious purposes, if:*

"(a) The corporation operates a laundry facility; and

"(b) The corporation provides laundry service to the public for compensation.

"This section shall not apply to a corporation *organized and operated exclusively for educational purposes, if such corporation provides* laundry service solely for the staff and students of such corporation, whether or not such service is provided for compensation." (Italics added.)

Section 6 of Statutes 1972, chapter 1080, page 2014 provides: "This act is an urgency statute necessary for the immediate preservation of the public peace, health or safety within the meaning of Article IV of the Constitution and shall go into immediate effect. The facts constituting such necessity are:

"That in order for the provisions of this act to be applied to the present income year, this act must go into effect immediately."

Section 23701d provides in pertinent part that "Corporations . . . organized and operated exclusively for religious, charitable, scientific . . . or educational purposes, or for the prevention of cruelty to children or animals" are exempt from California franchise and income taxes.

[5]Board stipulated in writing at trial that this was the reason for the statute's enactment.

corporation franchise tax return for the period commencing January 1, 1972, and ending December 31, 1972, and paid to Board the sum of $200. Association also paid an estimated tax of $200 for the following fiscal year. On or about July 6, 1973, Association filed its claim for refund for $400 with Board, and on July 13, 1973, Board denied Association's claim for refund. This action for refund followed.

## ISSUE

The trial court adjudged that section 23704.5 is unconstitutional. The reasons are found in the court's conclusions of law. In sum they are: (1) The classification is arbitrary and it is not reasonably related to any permissible purpose. (2) The classification is arbitrary and capricious because it relates only to educational and religious corporations operating laundries that serve the public, and therefore violates the equal protection clauses of the United States and California Constitutions. (3) It violates article IV, section 16 of the California Constitution in that it is a special statute in a case where a general statute can be made applicable. (4) If the statute was passed for the purpose of restricting competition such object is not within the police power of the State of California to deprive Association of property without due process of law.

The constitutionality of section 23704.5 is the only issue before us.

## ARGUMENT

Board's argument on appeal is traditional. Board agrees section 23704.5 is narrow in scope, but it contends the classification is constitutional if it has a "reasonable basis" or bears a "rational relation" to the purpose of the legislation, and reminds us the statute is entitled to the presumption of validity which was not rebutted by Association.[6]

The "reasonable basis" behind the statute, Board contends, is that Association is operating a laundry for the benefit of the public and is

---

[6]Cases cited by Board that delineate the "reasonable basis" or "rational relation" rule are: *Carmichael* v. *Southern Coal Co.*, 301 U.S. 495 [81 L.Ed. 1245, 57 S.Ct. 868, 109 A.L.R. 1327]; *Allied Stores of Ohio* v. *Bowers*, 358 U.S. 522 [2 L.Ed.2d 272, 78 S.Ct. 340]; *San Antonio School District* v. *Rodriguez*, 411 U.S. 1 [36 L.Ed.2d 16, 93 S.Ct. 1278]; and *Dandridge* v. *Williams*, 397 U.S. 471 [25 L.Ed.2d 491, 90 S.Ct. 1153]. On the presumption of constitutionality see *Henry's Restaurants of Pomona, Inc.* v. *State Bd. of Equalization*, 30 Cal.App.3d 1009, 1016 [106 Cal.Rptr. 867].

therefore engaged in a profit-making business which distinguishes it from other religious and educational corporations that are entitled to a charitable exemption. That by reason of the fact that it pays less taxes than laundry businesses not favored by any charitable tax exemption, Association has an unfair competitive advantage. Board claims Association can avoid the loss of the exemption by the simple expedient of separately incorporating its laundries which will equalize the tax burden and not penalize the schools.

As to the narrow scope of the problem, Board states that if it is shown that there are competitive problems by reason of an inequitable tax burden in other industries operated by charitable institutions, the Legislature can enact a broader statute. However, this was not the problem before the Legislature and as it is entitled to attack each problem brought to its attention on a step-by-step basis, the legislation has a reasonable or rational basis to the purpose of the legislation, and is constitutional.

■ Board's principal argument is aimed directly at the court's conclusion that the legislation is unconstitutional because it creates an arbitrary and capricious classification and denies Association equal protection of the law. We agree this is the crucial question facing us and that the case can be determined solely on this issue.

In *Brown* v. *Merlo,* 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212][7] our Supreme Court succinctly summarizes "classification" standards when applied to the equal protection issue. ■ Starting on page 861, the court states: "Article I, sections 11 and 21 of the California Constitution guarantee to every person that '[a]ll laws of a general nature shall have a uniform operation' and that '[no] citizen, or class of citizens, [shall] be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens'; . . . This principle of 'equal protection' preserved by both state and federal Constitutions, of course, 'does not preclude the state from drawing any distinctions between different groups of individuals' [citation], but it does require that, at a minimum, 'persons similarly situated with respect to the legitimate purpose of the law receive like treatment.' [Citations.]

---

[7]The factual problem in *Brown* is quite different from this case, but the basic law is applicable.

■

■ "As the United States Supreme Court recently phrased the federal constitutional standard: 'The Equal Protection Clause . . . den[ies] to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. *A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike."* ' (*Reed* v. *Reed* (1971) 404 U.S. 71, 75-76 [30 L.Ed.2d 225, 229, 92 S.Ct. 251], quoting *Royster Guano Co.* v. *Virginia* (1920) 253 U.S. 412, 415 [64 L.Ed. 989, 990-991, 40 S.Ct. 560] (italics added); [citations].) Thus, when a statute provides that one class shall receive different treatment from another, our constitutional provisions demand more 'than nondiscriminatory application within the class . . . establish[ed]. . . . [They] also [impose] a requirement of some rationality in the nature of the class singled out.' (*Rinaldi* v. *Yeager* (1966) 384 U.S. 305, 308-309 [16 L.Ed.2d 577, 580, 86 S.Ct. 1497]; *Hayes* v. *Superior Court* (1971) 6 Cal.3d 216, 223 [98 Cal.Rptr. 449, 490 P.2d 1137].) [Fn. omitted.]

"In determining the scope of the class singled out for special burdens or benefits, a court cannot confine its view to the terms of the specific statute under attack, *but must judge the enactment's operation against the background of other legislative, administrative and judicial directives which govern the legal rights of similarly situated persons."* (Italics added.)

■ The emphasized language provides us with the starting point toward solving the issue. Other legislation governing the legal rights of similarly situated persons has been enacted and it reveals a pattern that is significant here. Prior to 1951, franchise tax exemption was given to a large number of nonprofit organizations that were listed in chapter 4 of the Revenue and Taxation Code. Some of these organizations, by way of example, are labor, religious, charitable, scientific, literary, educational, business leagues, and societies for prevention of cruelty to children or animals. These organizations were *not* precluded from engaging in profit-making commercial ventures and are not today.

In 1951 the Legislature realized that the franchise tax exemption gave these nonprofit organizations a competitive advantage. The situation was corrected by equalizing the tax through enactment of section 23731a (now § 23731) that imposes a franchise tax on the nonprofit organizations'

net income realized from unrelated business activities.[8] Churches were not included and maintained their exemption from the unrelated business tax. In 1969 section 23731a was amended to include churches.

We must assume the objective of the 1951 statute and the 1969 amendment was achieved; yet Board concedes section 23704.5 was enacted *because of an allegation* by the California Laundry and Linen Supply Association that Association's tax-exempt status gave it an unfair competitive advantage. In other words, we are told that when the business is a laundry, the unrelated business tax did not resolve the problem.

This is a provocative contention. The franchise tax on the net profit from an unrelated business was 7.6 percent,[9] which was the same tax paid by laundries and other businesses not owned by a tax-exempt organization. It is true the law grants tax-exempt organizations a $1,000 specific deduction on each unrelated business, but in the final computation of the tax the effect of this exemption was de minimis (and remains so even after the 1973 tax increase). We are not persuaded that it gives the tax-exempt organization a substantial competitive edge. The 1969 amendment reaffirmed the fact that nonprofit organizations could operate profit-making businesses and removed any meaningful competitive advantages that the churches had, thus the reason for the enactment of section 23704.5 is highly suspect.[10]

Board, in its argument, states "respondent Association by operating such a laundry differs from other religious and educational corporations which are entitled to a charitable exemption *because respondent is engaged in a profit making business.*" (Italics added.) This is clearly erroneous because exempt organizations are permitted to engage in profit-making businesses. For example, if Association were operating a car wash, retail dairy store, or any other unrelated business (except a laundry), Board's argument would set Association apart from other

---

[8]18 California Administrative Code section 23734-23734a(1)(b) states: "The primary objective of adoption of the unrelated business income tax was to eliminate a source of unfair competition by placing the unrelated business activities of certain exempt organizations upon the same tax basis as the nonexempt business endeavors with which they compete. . . ."

[9]The tax rate was increased to 9 percent after June 30, 1973.

[10]Board argues Association did not file unrelated business income tax returns in 1970 or 1971, therefore the unrelated business income tax had no effect upon the advantage of the tax-exempt status of Association. This argument is not germane. It is merely a problem of collection to which Board has a proper remedy.

churches not operating similar businesses, thereby causing it to lose its tax exemption. However, this is not the law. Only churches and educational facilities operating laundries are singled out. The discrimination is compounded by the fact that other charitable organizations named in section 23701d—and apparently any other organization granted tax exemption under chapter 4—could operate a laundry servicing the public without losing its tax exemption.

In the final analysis the issue is whether there is a reasonable distinction between laundries and other unrelated businesses, *and* religious/educational organizations and other nonprofit associations that justifies the different treatment required by section 23704.5. For the reasons given above, we conclude the effect of the discrimination is to unfairly isolate one type of business, and two types of organizations and deprive them of their tax exemption while others similarly situated remain free to engage in the same business without penalty.[11] The application of the statute deprives Association of equal protection of the law.

We are fully aware that "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." (*Morey* v. *Doud,* 354 U.S. 457, 465 [1 L.Ed.2d 1485, 1491, 77 S.Ct. 1344], citing *Williamson* v. *Lee Optical Co.,* 348 U.S. 483, 489 [99 L.Ed. 563, 573, 75 S.Ct. 461].) This rule, however, is subordinate to the "reasonable basis" rule. Also, there is no guarantee that the statute would be amended or another enacted to include other nonprofit organizations should they commence operating laundries, or, for that matter, to extend the rule to include other types of businesses. It must be borne in mind that the so-called tax advantage (which we minimized) is the same for all unrelated businesses; yet, the Legislature was apparently

---

[11]There are possible side effects that the statute could have on nonprofit organizations. Section 23704.5 provides: "For purposes of Section 23701d, a corporation shall not be deemed to be organized and operated exclusively for educational or religious purposes if [it operates a laundry]." The effect is to take away their nonprofit purpose (religious or educational). The extent of this result is not clear. The "nonprofit status is of paramount importance to all of the listed organizations. Without it, they may lose many advantages that are needed to enable them to serve the public. Conceivably, loss of this status could prevent gifts from donors from qualifying as tax deductions (a very important item to nonprofit associations.) Also, other benefits such as real property tax exemptions and federal tax allowances might ultimately be denied them. We do not state as a certainty that these effects will result because of the statute. This issue is not before us. However, there is no question that the door has been opened and many detrimental results are possible.

not concerned about this so-called advantage when applied to other businesses. Clearly, it was put on notice that if it affected one industry it could affect others.

The judgment is affirmed.

Stephens, Acting P. J., and Ashby, J., concurred.