[Civ. No. 48955. Second Dist., Div. Two. Jan. 17, 1977.]

ALAN VAN VLIET ENTERPRISES, INC., Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION,
Defendant and Appellant.

**COUNSEL**

Evelle J. Younger, Attorney General, Ernest P. Goodman, Assistant Attorney General, Philip C. Griffin and Herbert A. Levin, Deputy Attorneys General, for Defendant and Appellant.

Rogers & Harris and Michael Harris for Plaintiff and Respondent.

Wyman, Bautzer, Rothman & Kuchel, Barry E. Fink and Calvin Lau as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

FLEMING, J.—Plaintiff Alan Van Vliet Enterprises, Inc., doing business as American Coin Company, persuaded the trial court that a regulation of defendant California State Board of Equalization (Cal. Admin. Code, tit. 18, reg. 1599) too narrowly defines the transactions which qualify for the statutory exemption from sales and use taxes for commodity transactions in gold and other metal coins. (Rev. & Tax. Code, § 6355.) The board appeals the judgment.

The first subdivision of section 6355 states the tax exemption: "(a) There are exempted from the taxes imposed by this part the gross receipts from the sales in bulk of monetized bullion which are substantially equivalent to transactions in securities or commodities through a national securities or commodities exchange and the storage, use or other consumption in this state of monetized bullion so sold." In other words, while an ordinary sale of rare coins to a numismatist may be taxable, a bulk sale of coins to an investor interested in the coins for the value of their metallic content should be treated as any other commodity transaction, exempt from sales and use taxes.

The subsequent subdivisions amplify the meaning of the first: "(b) A sale in bulk, for purposes of this section, shall be deemed to have occurred if the amount of monetized bullion sold in the transaction totals, in face amount, the sum of one thousand dollars ($1,000) or more, or its equivalent." In other words, the transaction should involve substantial value, at least $1,000 face amount, to distinguish it as a commodity transaction from the usual coin sale to a hobbyist.

"(c) 'Monetized bullion,' for purposes of this section, means coins or other forms of money manufactured of gold, silver, or other metal and heretofore, now, or hereafter used as a medium of exchange under the laws of this state, the United States, or any foreign nation." In other

words, the tax exemption applies to transactions in real money coins, not private-minted tokens or medallions.[1]

Regulation 1599 provides in pertinent part at subdivision ██

"Neither the sales tax nor the use tax applies to sales of 'monetized bullion' provided the following conditions are met:

"(A) The sale is in bulk amount. A sale in bulk occurs if the face amount of the 'monetized bullion' is $1,000 or more. For example, 2,000 U.S.A. half dollar pieces have a sum face amount of $1,000.

"A person claiming the exemption for sales of foreign coins must in each case establish the dollar equivalency of the coins' face amounts. This may be done by establishing the generally accepted rate of exchange between currency of that denomination and dollars on the date of the sale of the monetized bullion for which the exemption is claimed. The rate of exchange is that amount offered for any currency of that face denomination, whether made of paper or of precious or base metal. The rate of exchange is not the market price offered only for the specific type or form of currency for which the exemption is claimed.

"If the monetized bullion is not a current medium of exchange and no currency can be established as its present successor, the monetized bullion has no dollar equivalent face amount. For example, no such equivalent can be established with respect to ancient coins issued by a former monetary authority which has no successor circulating currency presently authorized as a medium of exchange.

"The face amount of monetized bullion cannot be computed by determining the market value of the precious metals in the monetized

---

[1]Section 6355 continues: "(d) A sale of monetized bullion, for purposes of this section, shall be deemed to be substantially equivalent to a transaction in securities or commodities through a national securities or commodities exchange, if the sale is by or through a person who has applied for, and secured a certificate or license then in effect, under Division 4.5 (commencing with Section 29500) of Title 4 of the Corporations Code, authorizing him to conduct his business as a commodity exchange, commodity adviser, commodity salesman, commodity solicitor, or floor broker or who is exempted therefrom by the provisions of Sections 29511 to 29514, inclusive, of such code."

The final subdivision of section 6355 provides: "(e) This section shall be deemed declaratory of existing law and not amendatory thereof."

The Attorney General has concluded, however, that section 6355 creates new law, that before the enactment of section 6355 in 1973 no exemption for sales in bulk of monetized bullion existed. (57 Ops.Cal.Atty.Gen. 272, 276.)

bullion or by relating the defined gold or silver content of the dollar to the gold or silver content of the monetized bullion."

Plaintiff's evidence showed that coin dealers trade in certain coins as commodities based on the value of the metal in the coins. The commodity market value of the coins is unrelated to the value of paper currency of the same denomination used for international monetary exchange. At the time of trial, a Mexican 50-peso gold coin traded at $180 while 50 paper Mexican pesos were worth $4. The Austrian 100 corona gold coin sold for $140. Austria replaced the inflation-ravaged coin 50 years ago with the schilling at the rate of 10,000 coronas for each schilling; 1 paper schilling now trades at $.06. A $1,000 bag of United States silver-clad coins sells for $1,430. Thus, to qualify for the tax exemption under regulation 1599 a coin dealer could sell a $1,000 bag of United States silver-clad coins for $1,430, but would have to sell 250 Mexican 50-peso gold coins for $45,000 or about 1.8 million Austrian 100-corona gold coins for over $200 million to qualify for the same exemption. A sale of ancient coins that cannot be traced to currency traded in the present-day international money market would never be eligible for the tax exemption.

The trial court concluded that regulation 1599 is invalid "to the extent that it purports to exclude sales that do not fall within its terms, but are nevertheless 'bulk sales' as a matter of fact." The court ruled "that, to the extent the Regulation attempts to make the tax exclusion unavailable to a transaction in 'ancient coins issued by a former monetary authority which has no successor', it has the effect of narrowing the exemption of Section 6355 with a consequent enlargement of the sales and use tax and is, therefore, void. In addition, the Regulation is invalid in that it constructs an artificial reference to an exchange rate for paper money with the same name as metal coins which in reality have ceased to constitute a present medium of exchange in situations where the true value of such coins lies in the value of their metallic contents rather than by reference to their 'monetary equivalent' in paper money of the same issuing authority."

■ We concur in the judgment of the trial court. While the board has wide discretion to adopt administrative regulations to aid in carrying out the statutory intent of the Legislature (*Henry's Restaurants of Pomona, Inc.* v. *State Bd. of Equalization* (1973) 30 Cal.App.3d 1009, 1020 [106 Cal.Rptr. 867]) it may not by its regulations alter or impair that intent.

(Gov. Code, § 11374.) Final responsibility for proper interpretation of the statute rests with the courts. (*Action Trailer Sales, Inc.* v. *State Bd. of Equalization* (1975) 54 Cal.App.3d 125, 132-133 [126 Cal.Rptr. 339].) The trial court correctly found that regulation 1599 alters and impairs the intent of section 6355.

The regulation starts with the premise that for a transaction in foreign coins to qualify for tax exemption it must be shown that their face value in equivalent paper currency will purchase 1,000 United States paper dollars in the international money market. On this premise rest the further provisions that the value of the metal coins as a commodity is to be ignored and that the coins must be directly traceable to a paper currency currently traded in the international money market.

The basic premise of the regulation is incorrect, however, and the remaining provisions fall with it. Section 6355 nowhere requires the value of foreign coins to be determined by the international market in paper currency. The evidence showed that paper currency is valued for the government that issues it; metal coins as a commodity are valued for the metal they contain. This is a commodity-trading tax exemption. The Legislature surely intended commodity transactions in metal coins to be valued by the worth of the coins as a commodity, not by the worth of paper currency with similar inscription. There is no reason to distinguish between transactions in dollars or pesos or coronas for determining the availability of a tax exemption, and section 6355 intended no such distinction. The statute sets a $1,000 floor on the value of a transaction to qualify for the exemption. A thousand dollars of United States coins, the most commonly traded, will, by definition, always be worth at least $1,000. The "equivalent" to $1,000 in coins of other nations is the face amount of such coins that $1,000 will buy.

It follows that the metal coins need not be directly traceable to currency presently traded in the international money market. Only their $1,000 market value as a commodity need be shown. Section 6355 merely requires that the coins be used as a medium of exchange "heretofore, now, or hereafter" by California, the United States, or any foreign nation. We agree with the trial court that acceptance of the board's statutory interpretation—one that eliminates from the exemption monetized bullion which is not current legal tender and which is not tied to a successor circulating currency—would erase the word "heretofore" from the statute.

The board points out that when a statute speaks of the "face value" of an instrument it ordinarily means the value printed on the instrument without reference to the market value of the instrument. (*Wilson* v. *Justice's Court* (1937) 22 Cal.App.2d 278, 280 [70 P.2d 695].) Section 6355 refers not to "face value," however, but to "face amount, the sum of one thousand dollars ($1,000) or more, or its equivalent." As we have explained, in the context of foreign metal coins the only reasonable interpretation of this phrase is by reference to the market value of the coins, not the value of related paper currency.

The board urges that this reading of section 6355 still leaves the incongruity that a $1,000 face amount of United States coins may trade for more than $1,000 market value of foreign coins. The statute, however, does not determine bulk sales exclusively by $1,000 face amount. A $1,000 face amount transaction is "deemed" a bulk sale, but other sales, under proof guided by appropriate regulations, (*Henry's Restaurants of Pomona, Inc.* v. *State Bd. of Equalization* (1973) 30 Cal.App.3d 1009, 1021 [106 Cal.Rptr. 867]), might also be "deemed" bulk sales. The legislative history of section 6355 shows that a preliminary proposal to limit the definition of bulk sale to $1,000 face amount was rejected in favor of the present nonexclusive definition.[2] The Legislature knows how to construct an exclusive definition. (See, e.g., subd. (c) of § 6355.) It did not do so here.

Finally, the Board argues that absurdities of regulation 1599 can be ignored because of a saving provision: "A single sale of monetized bullion of several types will be considered to be a sale in bulk if the aggregate face amount of the coins (excluding coins which are transferred solely as a medium of exchange) is $1,000 or more or its equivalent." Thus if every transaction in Austrian 100-corona gold coins were accompanied by a sale of a $1,000 bag of United States silver-clad coins, the transactions would always be tax-exempt. The board insists, of course, that the multi-coin transaction be in good faith and not to avoid taxes.

This argument is without merit. The Legislature could hardly have foreseen or intended such machinations as prerequisite to commodity trading in metal coins. The regulation fails for its own illogic and want of

---

[2]"(b) A sale in bulk, for purposes of this section, shall not be deemed to have occurred unless if the amount of monetized bullion sold in the transaction totals, in face amount, the sum of one thousand dollars ($1,000) or more, or its equivalent." (Assem. Amend. to Bill No. 711, (1974 Reg. Sess.) Apr. 23, 1973.)

reasonable interpretation of the statute. It cannot be saved by forcing artificial transactions and unnecessary costs on the coin purchaser and injecting extraneous issues of good faith.

The judgment is affirmed.

Roth, P. J., and Compton, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied March 17, 1977.